Gab land, J.
delivered the opinion of the court.
The plaintiff, being a judgment creditor of the defendant, on the 20th of November, 1840, issued his execution, which, on the same day, was levied on a large quantity of household furniture, which is claimed by the intervenor, who alleged he purchased it on the 19th of November, 1840, for a valuable consideration, as will appear by a notarial act, filed with his petition of intervention.
The plaintiff denies the intervenor is owner of the furniture. He says, if it ever was sold, it was not delivered before his seizure; that the sale was fraudulent and void, as the defendant was in insolvent circumstances at the time, to the knowledge of the intervenor; that he knew of the judgment, as "he had once been summoned to answer, if he had not property of defendant’s in his hands; that although $1000 was paid in cash when the sale was *595 passed, and a noté given for $1500 more, 'yet it'was'all done for the purpose of defrauding him; that the money belonged to defendant, and the note was not to be paid; that the intervenor.has no means whatever, and defendant knew it; that the sale was made for $2500, whilst the property was worth upwards of $5000; that the intervenor has no family, keeps no hoarding-house, the property cannot be used by him, as he is not engaged in trade, and the purchase will prove a loss to him, if he is in good faith; that defendant is to keep the boarding-house, and the purchase was made to assist her; and lastly, he has a privilege on a quantity of carpeting, and other articles. [376] In addition to all these allegations, the plaintiff propounded interrogatories to the intervenor, to know where and how he obtained the$1000 he paid; whether he got it from a bank, and what bank; whethér he (the intervenor) owned any property in the city, and if so, what it was; .whether it was not understood that defendant was to remain in possession of the property; and finally, where his noté is, and if he ever expects to pay it.
To these interrogatories, the intervenor seems to have answered'with much good faith, that he borrowed the $1000 from a friend, and returned it in a few days after, as he got a note discounted in bank to repay it; that he has some promissory notes and furniture, also thirty-eight lots of ground in the parish of Jefferson, which were paid for. That there' was no understanding bétween him and defendant that the furniture was to remain in defendant’s possession; that the sale was not made with the intention of defrauding plaintiff, hut to assist defendant, who is, as he believes,' able to pay her debts, as fár as he knows any thing about them, but is temporarily embarrassed, and that he expects to pay the note he has given when it becomes due.
This suit is an instance of the trouble and difficulties a creditor may sometimes bring on himself, by pursuing a harsh and vexatious course towards his debtor. The demand of the plaintiff is for less than $900. A person who appears to be entirely solvent, and proved to be honest, acknowledges he owes the defendant $1500, payable in one year. Yet in place of calling upon him in the manner prescribed by the act of the legislature of 1839, the creditor pursues a course calculated to harass all the parties, and cast odium on them, without advancing his own interests. When he requested the' sheriff to make a levy, that officer told him the property had been sold, yet he persevered, and gave a bond to indemnify him, for seizing in the hands of a third person.
. The evidence shows, that Brower & Co. had an attachment and sequestration for about $1000 against the defendant. The intervenor agreéd to [377] purchase the furniture in possession of the sheriff, and pay ihé demand. ' The defendant- made a sale for $2500; Brower & Co. joined in it, received the $1000 in cash, subrogated the intervenor in all their rights, and the sainé day, they and defendant requested the sheriff to deliver the possession to the purchaser, which he did, as appears from the reeéipt of 'tíozey, acknowledging he had received the furniture on storage. All this had taken place before plaintiff issued his execution. This delivery, the plaintiff contends, was not sufficient, and rests his case very much on it. Upon' the evidence adduced,- we think there was a sufficient delivery of the furnituré. The seizure *596 by the sheriff divested the defendant of all right of possession of the property ; and when he, with the assent of the defendant and intervenor, delivered it to the latter, by giving him a receipt as having received it on storage, the provisions of the law were complied with. La. Code, 2452, 2458. The possession was given by the officer, and afterwards as an agent he received the furniture on storage.
As to the sale being fraudulent on account of the known insolvency of the vendor, we think the allegation is not sustained. It is not shown the defendant owed any person but Brower & Co., and plaintiff. Their debts were less than $2000. The sale was made for $2500, and plaintiff says, defendant’s furniture was worth upwards of $5000. The intervenor denies on oath, in his answers to interrogatories, that defendant was insolvent, and no effort is made to contradict him.
After the admissions, that $1000 in cash was paid as a part consideration of the sale, and a note for $1500 more executed, it is difficult to conceive an intention to defraud the plaintiff out of a debt of less than $900, when the $1500 was more than sufficient to pay it. The intervenor says on his oath, he expects to pay that note at maturity.
It is proved, that the intervenor is a clerk in a bank, at a liberal salary, that he has some property, and although the purchase he has made, may not prove a profitable one, we cannot on that account say the sale is fraudulent. [878] The jury, upon hearing all the testimony, found a verdict for the intervenor, and we see no sufficient cause to disturb it.
The judgment of the commercial court is, therefore, affirmed, with costs.